# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH P. SHUMAKER, | ) | CASE NO. 1:11CV2801 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Joseph P. Shumaker ("Shumaker" or "plaintiff") for an award of attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). (Doc. Nos. 20, 21.) The Commissioner of Social Security ("Commissioner" or "government") has filed a brief in opposition. (Doc. No. 23.) Plaintiff filed no reply. This matter is fully briefed and ripe for determination.

## I. BACKGROUND

Shumaker filed the instant action on December 28, 2011, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). (Doc. No. 1.) On February 4, 2013, the Court adopted the Report and Recommendation of the magistrate judge, concluding that the Commissioner's decision was not supported by substantial evidence to the extent it completely failed to discuss the impact, if any, of three disability determinations issued by the Department of Veterans Affairs ("VA"), which were not even mentioned or

acknowledged by the Commissioner.[1] Pursuant to sentence four of 42 U.S.C. § 405(g), the Court remanded for further proceedings.

Shumaker moves for attorney fees in the amount of $5,731.04, representing 31.70 total hours of service at a rate of $180.79 per hour, plus costs totaling $450.00, representing the filing fee of $350.00 plus a pro hac vice fee of $100.00, payable directly to counsel's law firm pursuant to an assignment executed by Shumaker. The Commissioner opposes the request and asserts that the government's position was substantially justified. In the alternative, the Commissioner asserts that the requested hourly rate and number of hours are unreasonable, and asks this Court to reduce any amount awarded. The Commissioner also opposes a direct payment to counsel.

## II. STANDARD OF REVIEW

The EAJA requires the government to pay a prevailing social security plaintiff's attorney's fees and costs[2] "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Howard v. Barnhart*, 376 F.3d 551, 553 (6th Cir. 2004). In *Shalala v. Schaefer*, 509 U.S. 292 (1993), the Court held that "prevailing party" status was achieved within the meaning of the EAJA when the plaintiff succeeded in securing a sentence four remand order, which differs from a sentence six order in

---

[1] The R&R noted that the VA had found plaintiff disabled under its regulations on several occasions. On October 21, 2005, he was found to have a 10% military-service-connected disability due to cardiomyopathy and depression; on April 24, 2006, this was increased to a 100% disability for a period from April 26 to July 1, 2006, to account for recovery from having a stent procedure. After that, on July 2, 2006, it decreased to 60% for the cardiomyopathy, with no mention of the depression. On July 24, 2008, the VA notified plaintiff that he was found to be 90% disabled due to cardiomyopathy. (*See* R&R at 1435-36.) None of these determinations were considered, or even mentioned, by the ALJ in his final decision dated February 11, 2010. (Doc. No. 10, beginning at 71.)

[2] Amounts awarded under the EAJA are in addition to any benefits awarded. *Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012) (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 795-986 (2002)).

that it "terminates the litigation with victory for the plaintiff[.]" *Id*. at 300-01; *see also Turner*, 680 F.3d at 723. "Allowing fee awards for sentence-four remands also furthers the EAJA's purpose of 'eliminat[ing] for the average person the financial disincentive to challenge unreasonable governmental actions' through fee-shifting." *Turner*, 680 F.3d at 724 (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990)).

A position is substantially justified under the EAJA when it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565 (internal quotation marks omitted). A reasonable person could find the Commissioner's position substantially justified if it rested on a "reasonable basis in law and fact." *Id*. at 566 n.2; *see Barnhart*, 376 F.3d at 554. The burden of demonstrating substantial justification "must be shouldered by the Government." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).[3]

### III. DISCUSSION

**A. The Commissioner's Litigation Position**

The Commissioner contends that, despite the error found by the Magistrate Judge, defense of the ALJ's ruling was substantially justified[4] because the R&R ultimately rejected two

---

[3] The Sixth Circuit has outlined several factors that a court should consider when evaluating whether the government's position was substantially justified. *Hartmann v. Stone*, 156 F.3d 1229 (6th Cir. 1998) (Table, text in WESTLAW) (citing *Pierce*, 487 U.S. at 568-69) (discussing factors). These factors include the views of other courts on the underlying merits of the government's position; whether those courts viewed the result as being close or clear; the underlying clarity of the law at the time the government took its position; and the extent to which the government's position comported with the applicable law. *Id.* "In general, the more ambiguous the law, the more the government can claim that its position had some support in the applicable statutes and case law." *Id*. at *3 (citing *Tennessee Baptist Children's Homes, Inc. v. United States*, 790 F.2d 534, 540 (6th Cir.1986) (fact that issues were novel supported government's claim to substantial justification)). None of the individual factors are dispositive in and of themselves. *See Pierce*, 487 U.S. at 568-69. Under the particular circumstances of this case, however, the Court does not find guidance in these factors.

[4] The Court notes that the mere fact that it found the Commissioner's disability determination unsupported by "substantial evidence" does not require a finding that the determination was not "substantially justified." *Noble v. Barnhart*, 230 F. App'x 517, 519 (6th Cir. 2007).

of plaintiff's three arguments and remanded merely for articulation of the impact, if any, of the VA disability determinations. This "two out of three" argument is not compelling. Since the ALJ completely failed to account for the potential impact of the VA's several disability determinations, it is entirely possible that, had they been considered, plaintiff might have been found to be disabled. There is no way of knowing until the ALJ addresses that issue. On the record that was before the Court, it cannot be determined whether the ALJ was even *aware of* the VA's disability determinations, since not a single mention is made of any one of them, nor are they alluded to in any way.[5]

This Court recognizes that the Commissioner is not bound by a disability determination made by another federal agency. *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984). However, the determination, especially if it is close in time, is entitled to some consideration, and an ALJ should explain any reason why the VA's disability determination might be inconsistent with the Social Security Administration's disability regulations. *Ritchie v. Comm'r of Soc. Sec.*, No. 12-2405, 2013 WL 5496007, at *1-2 (6th Cir. Oct. 4, 2013);[6] *see also Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985) (noting it was "somewhat strange that . . . the Secretary would have the audacity to claim [that a DIB claimant] was not disabled" where "other responsible agencies" had allowed him black lung and workers' compensation benefits).

---

[5] Had the ALJ simply acknowledged the existence of these VA disability determinations, the deferential standard of review that this Court must apply might have suggested a presumption that the ALJ had rejected them. However, with no mention whatsoever, it is difficult to conclude that the ALJ gave them *any* consideration.

[6] In *Ritchie*, the VA's 100% disability determination had been made 21 years before social security disability was even claimed. Despite the VA's determination, Ritchie had chosen to continue to work for 17 more years. In the instant case, at the time Shumaker filed his claim for social security disability benefits, the VA had quite recently determined that he was 60% disabled and, by the time of the ALJ's determination, the VA had revised that to 90% disabled. Therefore, the VA determinations were close enough in time to be potentially relevant and, at the very least, deserved to be considered and their rejection explained.

In light of this analysis, the Court concludes that the Commissioner's position was not substantially justified. As a result, fee-shifting in this case would best "further[] the EAJA's purpose of 'eliminat[ing] for the average person the financial disincentive to challenge unreasonable governmental actions' through fee-shifting." *Turner*, 680 F.3d at 724.

**B.      The Appropriate Award**

The EAJA provides that the amount of any attorney fee awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justify a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). "In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support the requested increase." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009).

Here, plaintiff requests an hourly rate of $180.79, based upon an increased cost of living, as reflected in the Consumer Price Index ("CPI") for all urban consumers for the midwest urban region. (*See* Doc. No. 20-2 ¶ 11.) His counsel asserts that costs to the law firm of litigating these cases has increased by 75% between 1996 (when the current base rate was established by law) and 2012. (*Id.* ¶ 12.) The Commissioner opposes any increase, arguing that, in *Bryant*, the Sixth Circuit held that a district court did not abuse its discretion in declining to increase the rate based solely on the CPI and the rate of inflation, requiring instead that the attorney "produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line with those prevailing in the community for similar sevices by lawyers of reasonably

comparable skill, experience, and reputation." *Bryant*, 578 F.3d at 450 (internal quotation marks and citations omitted).

Here, plaintiff is not relying solely on the CPI and the rate of inflation. Rather, plaintiff submitted the affidavit of Attorney Harry J. Binder, the senior partner and chief financial officer of plaintiff's counsel's law firm. (*See* Doc. No. 20-5.) Mr. Binder attests to, and quantifies, increases in the law firm's three major cost components—labor, rent, and mail delivery—between 1996 and 2012. He further attests that the firm's attorneys billed at an hourly rate of $225 in 1996, whereas the rate in 2012 was $450.

That said, the Court notes that the attorney representing plaintiff (an Ohio resident) is from New York City, where costs and hourly billing rates are undoubtedly higher by comparison to the Northern District of Ohio. The burden is on the party requesting the increased fee to satisfy the Court that the amount requested is in line with the *local* prevailing market rates for similar work. *Bryant*, *supra*; *see also*, *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013) (noting that attorney's fees under another fee-shifting statute, 42 U.S.C. § 1988, "should be calculated according to the prevailing market rates in the relevant community") (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989)). This is quite easily accomplished by filing an affidavit from a local attorney who routinely handles these types of cases, which counsel here failed to do. It is not the Court's responsibility to comb through its own cases to attempt to ascertain a prevailing rate. Further, where the Court increases the rate set forth in the EAJA, that should be done based on a case-by-case analysis, since the statute requires that the increased fee be justified. "As a general proposition, rates awarded in other cases do not set the prevailing market rate—only the market can do that." *B&G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008).

The Court concludes that plaintiff has not met his individual burden of establishing the need for the particular increased rate requested. However, the Court agrees that $125.00 is too low a rate, given the limited information that plaintiff's counsel did provide. Since a reasonable increase is appropriate, the Court will permit a rate of $150.00 per hour.

The Commissioner also challenges plaintiff's claim for 31.70 hours of work, arguing that, in the Northern District of Ohio, "attorneys of record have most often been awarded fees for expending approximately 25 hours to successfully defend the case and prepare the fee application." (Doc. No. 23 at 1487, citing *Perry v. Comm'r of Soc. Sec.*, No. 3:09cv1847, 2011 WL 7096614 (N.D. Ohio Dec. 15, 2011).) There is nothing magical about a particular number of hours. Rather, the Court must examine the hours claimed and determine whether any are excessive, redundant or unnecessary. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (applying Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988). Here plaintiff's counsel seeks to be awarded for 31.70 hours, hardly an exorbitant amount on its face. (*See* Doc. No. 20-3.) However, because counsel's "itemization" gathers into lump sums the hours spent on several non-itemized tasks,[7] the Court is unable to determine, as it must, whether any of the hours claimed reflect excessive, redundant, or unnecessary services. *See, e.g., Stanback v. Shinseki*, No. 05-1392(E), 2011 WL 2110213, at * 4 (Vet. App. May 27, 2011) ("Large blocks of time

---

[7] The bulk of the hours claimed are found in three entries on counsel's "itemization":

| Date | | Description | Hours |
|---|---|---|---|
| 04/17/2012 | (DSJ) | Review entire transcript/outline medical evidence/ draft statement of facts/medical research/footnotes | 9.60 |
| 04/18/2012 | (DSJ) | Research and draft arguments on treating physician rule and VA disability determination | 9.40 |
| 04/19/2012 | (DSJ) | Research and draft arguments on credibility/ conclusion/proofread and additional reserach [sic] | 6.00 |

associated with either many tasks or a single task with only generalized descriptions such as 'research' or 'conference' are not specific enough to permit the Court an adequate basis for review and are subject to reduction.") (internal quotation marks and citation omitted). It is not the Court's role to pull out the briefs filed by counsel in near proximity to the dates in his "itemized" bill to ascertain whether, in the Court's view, the briefs required the number of hours expended. Nor is the Court unduly influenced by the fact that attorneys in other cases may (or may not) have been awarded fees for a certain number of hours, although those cases can, to some extent, provide guidance. The burden is on counsel in each case to justify the hours claimed for that case.

The Court concludes that, due to lack of sufficient itemization, the three entries listed in note 7, *supra*, should be reduced by 20% each, to 7.70, 7.50 and 4.80 hours, respectively, for a total number of hours awarded of 26.70. *See, e.g.*, *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 850 (6th Cir. 2013) (where documentation is lacking, "requests for more documentation and percentage reductions will generally be the appropriate response, not flat denial."); *see also Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 493 (6th Cir. 2013) (noting that a fee award "may be discounted as a result of poor documentation." (quoting *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986)).

Finally, plaintiff seeks to be reimbursed for costs totaling $450, representing the $350 filing fee plus a $100 pro hac vice fee. The Commissioner has not challenged these amounts. However, the Court will not award the $100 pro hac vice fee, since there was no reason for a New York lawyer, who was not otherwise authorized to practice in this Court, to appear on behalf of plaintiff. That was plaintiff's choice; therefore, he should reasonably bear that cost,

absent any showing that there are an insufficient number of qualified lawyers for this kind of case in the Northern District of Ohio, a showing that cannot be made.

In conclusion, the Court will award plaintiff $4,355.00 under the EAJA, representing $4,005.00 in attorney's fees (26.70 hours x $150.00/hour), plus $350 in costs.

## C.     Person Entitled to Payment

Plaintiff seeks an order that the amount awarded be paid directly to his counsel's law firm, pursuant to an assignment that he executed.

In *Astrue v. Ratliff*, 560 U.S. 586 (2010), the Supreme Court held that EAJA fees are payable to the plaintiff and are subject to setoff if the plaintiff has outstanding federal debts. The Court also implicitly recognized that the payment could be made directly to a plaintiff's attorney only in cases where the plaintiff both owes no debt to the government and had assigned any right to EAJA fees to the attorney.

Here, Shumaker has assigned his rights to EAJA fees awarded as a result of a remand. (*See* Doc. No. 20-4, Section III.) However, plaintiff has made no showing that he owes no debt to the government, such that it would be appropriate for this Court to order an immediate, direct payment to his attorney's law firm. *See, e.g.*, *Cutler v. Astrue*, No. 1:10cv343, 2010 WL 901186, at *1 (N.D. Ohio Mar. 14, 2011).

Therefore, the Court orders the Commissioner to determine within 30 days of the date of this order whether plaintiff owes a preexisting debt to the government, to offset that debt (if any) against the award herein, and to thereafter directly pay the balance to plaintiff's attorney's law firm, to be credited against the total amounts owed by plaintiff to his attorney. This procedure shall be completed and payment made by January 31, 2014, at the very latest.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion is substantially **GRANTED**, and the Court **AWARDS** attorney fees to plaintiff in the amount of $4,005.00, plus $350.00 in costs, for a total award of $4,355.00, payable to plaintiff's attorney's law firm following the procedure outlined in the paragraph immediately above.

**IT IS SO ORDERED**.

Dated: December 11, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**